# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs October 1, 2013

## JERRY HALEY v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Lauderdale County**
**No. 8498    Joseph H. Walker, III, Judge**

---

**No. W2013-00419-CCA-R3-PC  - Filed December 5, 2013**

---

The Petitioner, Jerry Haley, appeals the Lauderdale County Circuit Court's denial of his petition for post-conviction relief from his 2009 convictions for aggravated rape, aggravated kidnapping, and aggravated criminal trespass and his effective sixty-year sentence. The Petitioner contends that he received the ineffective assistance of counsel. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which JERRY L. SMITH and NORMA MCGEE OGLE, JJ., joined.

Scott A. Lovelace, Ripley, Tennessee, for the appellant, Jerry Haley.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Senior Counsel; D. Michael Dunavant, District Attorney General; and Julie K. Pillow, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

According to this court's opinion in the appeal of the Petitioner's convictions, the evidence at the trial showed that:

> At approximately 4:00 a.m. on the day of the incident, the victim awoke to discover that the defendant had entered her home through a bathroom window. The victim had previously been asleep in her bedroom, and her three young children were asleep in separate rooms in the home. The defendant, armed with a screwdriver, approached the victim's bed and proceeded to hold her down while vaginally raping her. He repeatedly threatened her life while

pressing the screwdriver into her neck and abdomen. Afterward, the defendant ordered the victim to go into the bathroom and bathe. The defendant did not initially accompany the victim into the bathroom but remained in the bedroom where he proceeded to remove the sheets from the victim's bed. While the victim was in the bathroom, she ran water in the bathtub but only pretended to bathe, as she knew that she had the defendant's sperm on her body. The defendant, at some point, did enter the bathroom and reminded the victim that she was not to go to the police. Thereafter, the victim heard the defendant exit the house through the backdoor. Prior to the time she awoke to find the defendant in her bedroom, the victim had never seen the defendant before. She stated that the defendant did not have permission to enter the home and that any sexual contact between the two was not consensual. She also stated that her cell phone was taken by her attacker.

After hearing the defendant leave, the victim proceeded to gather her children and leave the home. She called a friend, who met her at the hospital. Police were called and met the victim at the hospital. The victim was still visibly shaken and upset but was able to give police a general description of her attacker. After receiving treatment at the hospital, the victim was taken to the sexual assault center in Memphis where a rape kit was collected. Along with the victim's clothing and bed linens, the rape kit was sent to the Tennessee Bureau of Investigation (TBI) for testing. In the interim, police asked the victim to view a photographic lineup, and she selected Courtney Ricks as someone who looked similar to her attacker.

A sample of sperm was found on the victim, and the resulting profile was entered into the CODIS database. The sample entered matched that of the defendant, which had previously been entered into the system. After learning that the sperm found on the victim matched the defendant's DNA profile, officers located him in the Henry County jail where he was incarcerated on separate charges. Officers met with the defendant, and he denied having sex with a "white woman" in the victim's area. He did provide a DNA sample to officers, which was tested and verified as a match to the sperm found on the victim.

. . . A trial was held at which the victim and police officers testified to the above facts. In his defense, the defendant testified and called John Wallace, a friend whom the defendant had known for several years. Both testified that, on the day in question, the defendant called Wallace and asked him to come to Ripley to pick up the defendant. After picking up the

defendant, the two, along with Wallace's girlfriend, proceeded to a home, which the defendant believed belonged to Courtney Ricks, in order to purchase cocaine. The defendant further testified that Courtney Ricks informed him that his girlfriend was in the back bedroom and that she might have sex with the defendant in exchange for cocaine. According to the defendant, he went into the back bedroom of the home and found the victim, with whom he then engaged in consensual sex. Afterward, according to both the defendant and Wallace, the group left the home and went to a motel in Union City.

*State v. Jerry Phillip Haley*, No. W2009-01800-CCA-R3-CD, slip op. at 2-3 (Tenn. Crim. App. Sept. 16, 2011).

A Lauderdale County Circuit Court jury convicted the Petitioner of aggravated rape, aggravated kidnapping, and aggravated criminal trespass. He was sentenced to forty years for the rape conviction, twenty years for the kidnapping conviction, and eleven months, twenty-nine days for the trespass conviction with the rape and kidnapping sentences to be served consecutively, for an effective sixty-year sentence. This court affirmed his convictions. *Id.*

At the post-conviction hearing, the Petitioner testified that he met with counsel three times before the trial. He said he was charged in February 2009 and met with counsel about one week later for about two hours. He said counsel told him that he was unsure if their conversation was being recorded and that they would talk more later. He said, though, that at the first meeting, he gave counsel the "story line," the names of several witnesses to contact, and Samantha Cowan's phone number. He said counsel told him he would return to work on the case with him.

The Petitioner testified that he next met with counsel two weeks before the trial during the last week of May for about two hours and that counsel showed him a photograph lineup from which a photograph of another man had been chosen. He said counsel had not filed a motion for discovery at that time. He said he and counsel did not discuss the elements of the case or the charges against him at the second meeting but discussed why counsel had not spoken with him, sent him letters, or returned his or his family's telephone calls. He said his sister and Samantha Cowan made several attempts to contact counsel.

The Petitioner testified that Ms. Cowan possessed names of witnesses who were available for his defense. He said that he did not tell counsel everything in the first meeting because counsel told him it might be recorded and he thought they would talk later. He said counsel told him that he made several attempts to contact the Petitioner before the trial but could not find him. He told counsel that two weeks before the trial was not enough time to

prepare for the trial and that counsel could not prepare effectively for the trial if he did not know the witnesses or the case. He told counsel that if he had returned Ms. Cowan's telephone calls, she could have given him the witnesses' names and contact information.

The Petitioner testified that his third meeting with counsel was on June 5, 2009, and that they met for two to three hours. He said that although counsel reviewed the motion for discovery with him, he did not understand much of it. He denied counsel discussed the elements of the crimes, the nature of the crimes, or why the crimes were aggravated and said counsel only told him to accept the plea agreement. He said that during the second meeting, counsel told him the State offered him fifteen years and that during the June 5 meeting, counsel told him the State reduced the offer to twelve years. He said counsel told him that it was in his best interest to accept the offer. He said that when they reviewed the discovery, counsel told him the State was asking for the maximum forty-year sentence if the Petitioner was found guilty at the trial. He said, though, he actually faced sixty-eight to seventy-five years if convicted of all three charges. He agreed forty to seventy-five years was a large variation and said that had he known the range, he would have accepted a best interest plea because he would have a chance to see his children.

The Petitioner testified that counsel gave him the first portion of discovery at the second meeting and a second, larger portion at the June 5, 2009 meeting. He said that they reviewed the victim's statement, that counsel explained the forty-year maximum and the twelve-year offer, and that counsel told him he would served "9.3" if he accepted the offer. He said counsel told him to accept the offer more than he explained the case to him. He said that when he met with counsel, he did not understand "39-13-502" or the "criteria" and range of punishment for the crimes. He said that he was "secretly indicted," that he did not have a preliminary hearing, and that he did not know anything about the case other than what counsel told him.

The Petitioner testified that he was not present at his motion for a new trial hearing. He denied waiving his presence or telling counsel he did not want to be there and said he would have asked to attend the hearing. He said counsel only provided him the transcripts for the trial, voir dire, and a June 3 hearing at which he was not present.

The Petitioner agreed that he received a "rough copy" of an appellate brief, which included an issue about the sufficiency of the evidence. He said that he was studying on his own when he received the brief and that he looked at the lesser-included offenses under 39-13-502. He said he noticed issues with the brief and attempted to respond to counsel. He received a letter from counsel around August 16, 2009, after the motion for a new trial hearing, and counsel apologized for not communicating with the Petitioner, explaining that counsel had family issues and had accepted a larger caseload. He said the final appellate

brief did not address the sufficiency of the evidence but argued certain evidence was hearsay and cited "*State v. Anthony.*" He said he mentioned *Anthony* in a letter to counsel because it was not included in the original rough draft. He denied that counsel discussed with him the "continuing and ongoing nature of the offense or a breach in the chain of events." He said counsel sent him case law about the chain of events required to prove kidnapping and told him he may receive "some kind of leeway" because there was no break in the chain.

The Petitioner testified that if he had been able to confer with counsel promptly and more than two days before the trial, the proceedings might have been different and that he probably would have accepted the State's offer. He said he did not understand the law completely because it was "forced" on him less than seventy-two hours before the trial. He said he knew the charges against him. He said that he did not know how much time he faced or that he could have spoken with counsel about defenses because he was not a lawyer and depended on counsel to inform him. He said he did not know what to do when counsel did not obtain the witness information until two weeks before the trial.

On cross-examination, the Petitioner agreed he was not a "stranger" to the court system and had significant criminal history from Henry County dating from 2002. He said counsel first met with him in the Henry County jail. He said "he could not say" that counsel reviewed with him his Notice of Enhancement or explained aggravated rape was a Class A felony. He denied counsel reviewed with him his aggravated rape charge or the elements of the crime but said he knew he was charged with aggravated rape. He denied knowing that a DNA test was completed or that a database search matched his DNA to that found on the victim, but he knew the police "swabbed" him. He said that he only knew he was charged and that he did not speak with counsel from February 2009 until the last week of May 2009.

The Petitioner testified that he received a copy of his indictment when he went to court but denied that counsel wrote "A, B, and C" on his copy. He said that before the State offered a plea agreement, counsel told him he might receive a forty-year sentence. He thought he faced forty years, not sixty-eight or seventy years. He denied receiving the plea offer form showing him twelve years on which counsel listed aggravated rape as a Class A felony with a possible fifteen- to sixty-year sentence, aggravated burglary as a Class C felony with a possible three- to fifteen-year sentence, and aggravated kidnapping with a possible eight- to thirty-year sentence. He said counsel only told him that the State offered him twelve years.

The Petitioner agreed that at the trial, he told the jury his version of the facts and admitted having consensual sex with the victim but that the jury believed the victim's version of the facts. He denied making claims against counsel because he did not like the jury's verdict. He said that if counsel had time to prepare for the trial, counsel could have found

-5-

Tammy Bradley, a possible witness. He said that Ms. Bradley was at the house during the rape but that she was not at the post-conviction hearing because he could not find her. He denied other witnesses existed who counsel should have called at the trial. He said that John Wallace testified on his behalf at the trial and that the jury believed part of his testimony. He said Mr. Wallace gave counsel's private investigator Ms. Bradley's telephone number and address.

The Petitioner testified that his defense at the trial was that the sex was consensual and that counsel did not participate in choosing the defense. He said that counsel only asked for his version of the facts and that he told counsel his version and the names of the witnesses. He said counsel made a "weak" attempt to locate the witnesses and found only Mr. Wallace, who attempted to help counsel find Ms. Bradley. He said counsel made only one attempt to contact Ms. Bradley. He said that if counsel had investigated the Petitioner's first version of facts, counsel would have found Ms. Cowan, who could have led counsel to other witnesses. He admitted giving counsel two versions of the facts. He said that he knew he faced a possible forty-year sentence when he declined the twelve-year offer, that he understood the plea agreement, and that it was his decision to proceed to the trial.

The Petitioner agreed that the *Anthony* issue was briefed and sent to the appellate court and that the court concluded that the offenses were two separate events independent of each other and that *Anthony* did not apply. When asked if he wanted other issues raised on appeal, he stated that a hearsay issue existed in Count One. He agreed the issue was briefed but considered waived by the appellate court because it was not presented in his motion for a new trial.

The Petitioner testified that his discussions with counsel became "conflicting" because he reported counsel to the Board of Professional Responsibility. He said counsel's letters in response to his letters were negative and "conflicting" after he asked counsel to "excuse" himself from the case. He denied that counsel raised his desired appellate issues and said he wanted the sufficiency of the evidence and a fatal variance argued.

On redirect examination, the Petitioner testified that when he asked counsel to remove himself from the case, counsel told him he should have asked the judge, which he denied doing. He said he was unfamiliar with how the court worked and was afraid to speak in the courtroom. He said counsel did not do a "substantial job" because he only had a couple of good conversations with counsel and because counsel "took so long to prepare" him. He said he did not have access to a law library to prepare. He said that if counsel had given him the opportunity to help with his defense, they could have prepared better but that counsel wanted him to accept the State's offer.

Counsel testified that he had three or four meetings with the Petitioner and that the Petitioner probably was accurate as to the dates of those meetings. His notes stated that Ms. Cowan would contact his office, but he was unsure if she did. He said the Petitioner's original story indicated that Ms. Cowan would be the primary witness and that she and "Buck" picked up the Petitioner and were with him all night.

Counsel testified that when Ms. Cowan could not be notified, the Petitioner contacted Mr. Wallace. He said Mr. Wallace recalled picking up the Petitioner once in the Ripley area when Ms. Bradley was with him and driving to Paris but did not recall stopping, the Petitioner's leaving the car, or a woman in a negligee calling the Petitioner inside her house. Mr. Wallace told him that Ms. Bradley might recall more but that he did not know about a meeting or the Petitioner's being seduced. He was unsure if Mr. Wallace told him how to contact Ms. Bradley. He said, though, that he had her telephone number, that he left her a message, and that she refused to contact his office.

Counsel testified that the Petitioner admitted having sex with the victim and that he told the Petitioner consent was the only issue. He said the Petitioner was convinced his personality would persuade the jury that he could not have committed the crime. He said he attempted to explain to the Petitioner that most people were not "out running the streets" at 4:00 or 5:00 a.m. He told the Petitioner the jury would be unable to relate and would not believe the Petitioner's story that he knew the victim and met her at a store. He said the Petitioner told him three versions of the facts. He told the Petitioner that consent was the issue regardless of the version of facts the Petitioner chose and that it was a "50/50 throw" who the jury would believe. He told the Petitioner the jury would not like him or this type of behavior but was unsuccessful in persuading the Petitioner.

Counsel testified that he explained to the Petitioner he could serve "serious" time. He determined the Petitioner was a Range II offender and thought the Petitioner faced forty or fifty years but did not believe he would receive that much time. He said the Petitioner was not convicted of aggravated burglary, which was a success.

Counsel testified that the only defense discussed was whether the sex was consensual. He said they discussed the burglary charge and the "she let me in" theory. He said that the Petitioner told him witnesses would testify that the victim came to the door in a negligee and let him inside but that no one confirmed the story. He said he told the Petitioner that even if no witnesses confirmed his story, the Petitioner could testify that the victim let him inside her house but that the defense might not be successful. He said, though, that the defense was successful, that the evidence of the Petitioner's hair being on the bathroom window was suppressed, and that the jury questioned the aggravated burglary.

-7-

When asked whether he cross-examined Officer Ruff about the victim's choosing another man from a photograph lineup, counsel testified that the DNA evidence was proof of the Petitioner's identity and that it did not matter if the victim thought he was a "moose." He said later that the victim chose the wrong person from a photograph lineup and that he questioned her about the identification. He said the biggest issue was explaining the DNA.

Counsel agreed that he asked Officer Ruff whether the Defendant was "Mirandized" and advised of his rights before making statements to the police and said he filed a motion to suppress. He said that when the police went to the jail to obtain a DNA sample, the Petitioner made a voluntary statement and questioned the police. He said nothing indicated the Petitioner was questioned, only that a DNA sample was taken. He did not believe the Petitioner's statements were inculpatory. He could not recall whether Officer Terry Jordan was with Officer Ruff when the sample was taken but thought two officers went to the jail. He did not believe Officer Jordan was questioned during the trial. He did not think Officer Jordan's testimony would have helped the Petitioner because he admitted having sex with the victim, his DNA was found on the victim, no allegation of evidence tampering was made, and he had "always owned up to and been fairly proud" of having sex with the victim.

Counsel testified that he thought he stipulated to the admission of the medical records and waived the appearance of the keeper of the records and the nurses. He thought he noted that Nurse Guines examined the victim at the hospital and listed the victim's pain level at zero out of ten but agreed that the complaint stated the victim complained of vaginal and abdominal pain sixty minutes later in Memphis. He did not believe the victim had serious or long-term injuries and said the issue was consent, not whether the victim was hurt. He said the Petitioner's initial theory was that he knew the victim, that she was mad because he would not maintain a relationship with her, and that she fabricated the story.

Counsel testified that he probably waived the Petitioner's appearance at the motion for a new trial hearing. He said that the Petitioner was not called as a witness and that he "quite often" waived a defendant's appearance at the motion for a new trial hearing, especially if the defendant was in custody.

Counsel testified that he did not file any motions before the trial to investigate the victim's psychological or sexual history. He said that if the information was exculpatory evidence, the State must provide it but that he did not have a reason to suspect such information existed. He knew the victim "suffered" after the incident but did not know of any previous mental illness. He did not want to explore the victim's previous mental illness because she would have been incapable of consent if mental illness was shown, which would have eliminated the consent defense. He did not believe it was alleged that the victim was "mentally defective."

On cross-examination, counsel testified that the case went straight to the grand jury because of the DNA match. He said no identity defense existed because of the DNA evidence. He agreed that he met with the Petitioner and had a lengthy discussion with him close to the time he received the indictment. He agreed that the Petitioner gave him three versions of events but never wavered from his claim of consensual sex. He believed that he fully investigated the facts, that he examined all the legal issues, that he spent enough time with the Petitioner, and that the Petitioner understood his range of punishment. He agreed the case was a "50/50" case in which the jury could believe the victim or the Petitioner and said he attempted to dissuade the Petitioner's belief that his charisma would influence the jury. He said the Petitioner's psychosexual evaluation indicated he suffered from narcissism, and he believed this kept the Petitioner from seeing reality.

Counsel testified that he believed it was in the Petitioner's best interest to accept the State's twelve-year offer but that the Petitioner was "very vehement" in declining the offer. He said the Petitioner wanted to testify. He said that his job was to make recommendations and outline the issues but that the client made the ultimate decisions whether to accept an offer, proceed to trial, and testify. He said that he cross-examined the victim on every issue the Petitioner gave him and that the Petitioner actively participated at the trial. He thought the Petitioner would have told him if he needed to ask the victim other questions.

Counsel agreed that he spent considerable time during opening, closing, and cross-examination of the victim focusing on whether a screwdriver was a deadly weapon. He agreed he was successful in his arguments regarding the aggravated burglary charge because the jury reduced it to a Class A misdemeanor. He said that on appeal, he argued that the events were continuous because the State argued at the trial that the Petitioner held the victim on the bed. He said he wrote the Petitioner and explained the issue but told him that forcing the victim to the bathroom was a separate event and a break, which allowed a kidnapping conviction. He said the Petitioner wrote to the clerk's office and revealed the argument to the attorney general's office. He said that the victim testified that she was forced to move to the bathroom to bathe and that the defense did not dispute she went to the bathroom.

Counsel testified that he discussed "to some degree" with the Petitioner how he would proceed on appeal but that by the time of the appeal, he was writing the Petitioner every couple of weeks to explain issues. He felt he briefed every viable issue on appeal but said very little remained after the jury made its determination. He denied anything would have changed the outcome of the trial and said no witnesses were found to substantiate the consensual sex claim. He agreed the verdict was based on the jury's credibility determination. On redirect examination, counsel said that the Petitioner wrote questions for him to ask the victim and that he did not know of an unanswered question.

In its order denying post-conviction relief, the trial court found that the Petitioner and counsel had adequate time to meet and form a defense based on the Petitioner's story that the sex was consensual. The court noted that the facts were not complicated, that semen proved the Petitioner was at the scene, that the victim said she was raped, that the Petitioner said the sex was consensual, and that the jury believed the victim. The court found that the Petitioner failed to prove counsel was deficient in investigating the facts of his case.

The trial court noted that the State made an offer to the Petitioner before the trial, that it was relayed to him, that he was unwilling to accept it, and that he was unhappy with the sentence he received after his trial. The court stated that the Petitioner gave counsel multiple versions of the facts, that counsel and the Petitioner discussed defense strategy, and that the Petitioner, who was a persistent offender and had multiple convictions from 2002 to 2005, was familiar with the court system. The court found that the Petitioner failed to show how additional meetings with counsel would have been beneficial. The court stated that the Petitioner argued he was not guilty at the trial, that the jury rejected the argument, and that he argued the same logic at the post-conviction hearing.

The trial court noted that the Petitioner claimed the evidence was insufficient to sustain his convictions and that counsel was ineffective for failing to raise the issue on appeal. The court found that the motion for a new trial contained the issue and that the appellate court noted "overwhelming evidence" against the Petitioner. The court found that the Petitioner failed to show that counsel was deficient for failing to raise the issue or that the result would have been different if the issue had been raised.

The trial court found that the Petitioner failed to show counsel was deficient for failing to ensure his presence at the motion for a new trial hearing. The court noted that a convicted petitioner has no constitutional right to be present for the argument on a motion for a new trial and that the right of a petitioner to be present ends with the verdict. The court credited counsel's testimony that he reviewed with the Petitioner the indictment and charges and told him the range of possible punishment. In denying post-conviction relief, the court found that the Petitioner failed to establish the factual allegations in his petition by clear and convincing evidence, show counsel was deficient, or show counsel's performance was prejudicial. This appeal followed.

The Petitioner contends that he received the ineffective assistance of counsel. He argues that counsel was uninformed and unprepared because the Petitioner had inadequate time to meet with counsel before the trial. He argues that had they met more often, he might have chosen not to proceed to the trial and that counsel could have located witnesses. He also argues that counsel waived his appearance at the motion for a new trial hearing without his permission. The State counters that the Petitioner received the effective assistance of

counsel. The State argues that the Petitioner failed to prove further meetings with counsel would have resulted in a different outcome at the trial. The State also argues that the Petitioner waived his issue regarding his appearance at the motion for a new trial hearing by failing to support the allegation with argument as to how counsel was deficient or why he was prejudiced and by failing to cite to the record or any authority relevant to his right to be present at the hearing.

The burden in a post-conviction proceeding is on the petitioner to prove his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2012). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. *Id.* at 457. Post-conviction relief may only be given if a conviction or sentence is void or voidable because of a violation of a constitutional right. T.C.A. § 40-30-103 (2012).

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is on the Petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). In other words, a showing that counsel's performance fell below a reasonable standard is not enough because the Petitioner must also show that but for the substandard performance, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The *Strickland* standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. *State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the *Strickland* test. *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997). The performance prong requires a petitioner raising a claim of ineffectiveness to show that counsel's representation fell below an objective standard of reasonableness or "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. The prejudice prong requires a petitioner to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability means a "probability sufficient to undermine confidence in the outcome." *Id.*

Regarding the Petitioner's argument that counsel was uninformed and unprepared because the Petitioner had inadequate time to meet with him before the trial, counsel and the Petitioner agreed they met three times for two hours before the trial. Counsel testified that

he fully investigated the facts, that he examined all the legal issues, that he spent enough time with the Petitioner, and that the Petitioner understood his range of punishment. The Petitioner said that he understood the plea agreement and that it was his decision to proceed to the trial. The Petitioner admitted giving counsel multiple versions of the facts, and counsel told the Petitioner that consent was the only issue. The Petitioner said that his defense at the trial was that the sex was consensual and that he admitted at the trial that he had sex with the victim.

As we have noted, the trial court found that the Petitioner and counsel had adequate time to meet and form a defense based on consensual sex and that the Petitioner failed to prove counsel was deficient in investigating the facts. The court credited counsel's testimony that he reviewed with the Petitioner the indictment and charges and told him the range of possible punishment. The record does not preponderate against the trial court's findings.

Regarding the Petitioner's argument that counsel could have located witnesses if he had allowed more time to prepare for the trial, the Petitioner failed to offer the testimony of other witnesses at the hearing to show what their trial testimony would have been if called at the trial. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990) (stating that for a petitioner to establish ineffective assistance from failure to call a trial witness, the witness's testimony should be presented at the post-conviction hearing). The Petitioner's first version of the facts included Ms. Cowan as a witness, and counsel's notes stated that she would contact his office. Although the Petitioner said Ms. Cowan contacted counsel's office, counsel was unsure. Before the trial, counsel contacted Mr. Wallace, who testified for the defense at the trial, but he could not confirm the consensual sex. Counsel attempted to call Tammy Bradley, but she did not contact his office after a message was left. The Petitioner admitted he could not find Ms. Bradley for the post-conviction hearing and denied other witnesses existed who counsel should have called to testify at the trial. *See id.* at 757-58 (stating that a petitioner is not entitled to post-conviction relief for failure to call a material witness unless he shows that the witness could have been found through reasonable investigation and would have testified favorably for the defense). Counsel said no witness was found to corroborate the Petitioner's claim that the sex was consensual. The Petitioner failed to show that counsel's performance was deficient or that he was prejudiced from counsel's failure to call other witnesses at the trial.

The State argues that the Petitioner waived his issue concerning his appearance at the motion for a new trial hearing by failing to support the allegation with argument as to how counsel was deficient or why he was prejudiced and by failing to cite to the record or any authority relevant to his right to be present at the hearing. The Petitioner's brief fails to cite any legal authority for his claim that counsel was deficient for waiving his appearance at the motion for a new trial hearing. In any event, the Petitioner does not have a constitutional

right to be present at the motion for a new trial hearing. *See Cisco v. State*, 28 S.W.2d 338, 338-39 (Tenn. 1930); *Curtis Daniel Hart v. State*, No. W2008-02715-CCA-R3-PC, slip op. at 12 (Tenn. Crim. App. Mar. 18, 2010), *perm. app. denied* (Tenn. Aug. 24, 2010).

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE